UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WING BUILDING HOLDING CO. LLC,

         Plaintiff,

    v.            1:13-CV-1007
                    (FJS/RFT)

THE STANDARD FIRE INSURANCE COMPANY,

         Defendant.

_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **MCNAMEE, LOCHNER, TITUS & WILLIAMS, PC**<br>677 Broadway<br>Albany, New York 12207-2503<br>Attorneys for Plaintiff | KEVIN LAURILLIARD, ESQ. |
| **STRADLEY RONON STEVENS & YOUNG, LLP**<br>2005 Market Street, Suite 2600<br>Philadelphia, Pennsylvania 19103-7098<br>Attorneys for Defendant | BENJAMIN E. GORDON, ESQ.<br>CRAIG R. BLACKMAN, ESQ. |
| **BOND, SCHOENECK & KING, PLLC**<br>One Lincoln Center<br>Syracuse, New York 13202<br>Attorneys for Defendant | SUZANNE O. GALBATO, ESQ. |

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Wing Building Holding Company ("Plaintiff" or "Wing") brings this action alleging that The Standard Fire Insurance Company ("Defendant" or "Standard") wrongfully denied Plaintiff's claim for payment of damages allegedly resulting from heavy rainfall during Hurricane Irene in August 2011.

On August 19, 2013, Plaintiff filed its complaint in the United States District Court for the Northern District of New York. In its Complaint, Plaintiff alleges that it purchased from Defendant a Standard Flood Insurance Policy for its property and that, as a result of the heavy rainfall from Hurricane Irene on August 28, 2011, Plaintiff's property suffered substantial damage. Plaintiff claims that Defendant's insurance policy should pay for the damage. Furthermore, Plaintiff alleges that Defendant wrongfully denied Plaintiff's claim requesting payment for the damage. Based on these allegations, Plaintiff seeks judgment against Defendant in the amount of $115,374.00, plus interest at a legal rate of 9% per annum, plus costs and disbursements, and such other relief as may be just and proper.

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint in its entirety, with prejudice.

## II. DISCUSSION

**A.    Timeliness of Plaintiff's complaint**

Defendant argues that Plaintiff's lawsuit is time-barred by the National Fire Insurance Policy's ("NFIP") statute of limitations. The NFIP and the Standard Flood Insurance Policies ("SFIP") issued under it are federal regulations codified under the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq*. These regulations provide that any plaintiff attempting to

bring suit against a "Write-Your-Own" ("WYO") policy insurance company participating in the NFIP must file within one year of the date of the written denial of all or part of the claim. *See* 44 C.F.R. pt. 61, app. A(2), art. VII(R).

Here, Defendant sent two letters to Plaintiff, which are relevant to this determination. Defendant sent its first letter to Plaintiff on February 29, 2012 ("February 29, 2012 Letter"). In this letter, Defendant stated to Plaintiff, in relevant part:

> We have received and reviewed the Independent Adjuster's detailed estimate and Final Report documenting the covered flood damages you sustained . . . .
> . . . it is our understanding that you . . . have not signed the courtesy Proof of Loss provided by the adjuster nor have you submitted your own Proof of Loss.
> *While we cannot make formal determinations on your claim until we receive your Proof of Loss and a waiver from FEMA*, it is our understanding from the Independent Adjuster that you are looking for coverage on items that are not covered under the Standard Flood Insurance Policy such as mold, the elevator's related equipment, and foundation damage. *We would be required to deny* any damage from mold, moisture and/or mildew . . . .
> *We would be required to deny* damage to the elevator's related equipment . . . .
> Cleaning invoices from Insulate & Accessorize Company for $17,300 were submitted for consideration. Invoices 4701 and 4714 are not itemized; contain duplicate charges and non-covered items such as contents and manipulation. *We would be required to deny* coverage for contents manipulation . . . .

*See* Dkt. No. Dkt. No. 13-2, February 29, 2012 Letter at 2-5 (emphasis added).[1] Defendant sent its second letter to Plaintiff on August 21, 2012 ("August 21, 2012 Letter"). In this letter, Defendant stated to Plaintiff, in relevant part:

> *We are denying* payment for elevator and waste management invoices for contents located in the basement and all other non-covered items located in the basement . . . .
> *We are denying* payment for any pre-existing damages and damage from mold . . . .

---

[1] The Court's references to page numbers of documents that the parties have filed in this case refer to the page numbers that the Court's electronic filing system generates.

> . . . we are hereby complying with the Standard Flood Insurance
> Policy's requirement regarding payment or rejection of the
> insured's Proof of Loss within 60 days of its being filed by the
> insured. We have received a signed proof of loss in the amount of
> $115,374.00. *We are accepting* $12,373.21 of the Proof of Loss
> *and are rejecting* $103,000.79 . . . .
> If you do not agree with our decision to deny your claim or any
> part of the claim, Federal law allows you to appeal the decision
> within 60 days of the date of *this denial letter*.

*See* Dkt. No. 1-2, August 21, 2012 Letter at 2-5 (emphasis added).

The distinction between these letters is self-evident. The earlier letter, with its repeated use of the conditional language, "We would be required to deny . . ." provides nothing more than advice as to a possible or likely future determination. *See* February 29, 2012 Letter at 2-5. In fact, the earlier letter explicitly states that, at the time of its writing, Defendant "[could] not make formal determinations on [Plaintiff's] claim . . ." *See id.* at 3. The contrast between this letter and the August 21, 2012 Letter resolves any possible ambiguity as to the meaning of the former. In the August 21, 2012 Letter, Defendant clearly and definitively states, "We are denying . . . " several of Plaintiff's insurance claims. *See* August 21, 2012 Letter at 2-3. The August 21, 2012 letter also explicitly refers to itself as a "denial letter." *See id.* at 5.

Accordingly, the Court finds that Defendant's partial denial of Plaintiff's insurance claim occurred on August 21, 2012, and that Plaintiff's filing of its complaint on August 19, 2013, was not untimely under the SFIP's statute of limitations.

### B. Timeliness of Plaintiff's Proof of Loss

Defendant argues that the Court should dismiss Plaintiff's lawsuit because Plaintiff filed an untimely Proof of Loss related to its claim. The SFIP requires an insured party to submit a Proof of Loss to its insurer within sixty days of a flood loss. *See* 44 C.F.R. pt. 61, app. A(1), art.

VII(J). The Second Circuit has required strict construction of SFIP Proof of Loss requirements. *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 175 (2d Cir. 2012) (citations omitted). Likewise, this Court has held that failure to submit a timely signed and sworn Proof of Loss is an absolute bar to a plaintiff's claims. *See Kehoe v. Travelers Ins. Co.,* No. 1:08-CV-566, 2009 WL 87589, *1, *3 (N.D.N.Y. Jan. 12, 2009) (holding that failure to submit timely Proof of Loss barred a suit, even though the plaintiff had been "in frequent contact with [Defendant] regarding his claim, and provided the insurer with an independent engineer's report which opined the loss was due to erosion caused by flood waters").

Other district courts in the Second Circuit have consistently applied this straightforward reading of the SFIP. *See, e.g.*, *Exim Mortg. Banking Corp. v. Witt*, 16 F. Supp. 2d 174 (D. Conn. 1998). Courts in other circuits have made similar findings. *See, e.g.*, *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 810 (3d Cir. 2005) (holding that "[t]he SFIP places the onus on the insured to file the proof of loss within 60 days regardless of the representations and assistance, or lack thereof, provided by the insurer or its adjuster" (citations omitted)); *Phelps v. FEMA*, 785 F.2d 13, 15, 19 (1st Cir. 1986) (holding that failure to submit a timely Proof of Loss barred a suit, even though "FEMA's agents specifically assured the Phelps that they need do nothing further [when no Proof of Loss had been submitted]").

Moreover, the United States Supreme Court has recognized that courts must strictly construe insurance policies issued under federal programs, as they are direct claims on the Federal Treasury. *See, e.g.*, *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) (recognizing "the duty of all courts to observe the conditions defined by Congress for charging the public treasury"). This principle is directly applicable here, as flood loss claims under the NFIP are paid with funds from the Federal Treasury. *See* 42 U.S.C. § 4017(d)(1); *Jacobson*, 672

F.3d at 175 (stating that, "[t]hus, while the private insurance companies administer the federal program, '[i]t is the Government, not the companies, that pays the claims'" (internal quotation and other citation omitted)).

Here, Plaintiff's flood loss occurred on August 28, 2011. FEMA extended the Proof of Loss filing deadline for losses related to Hurricane Irene until January 23, 2012. Plaintiff's Proof of Loss is dated July 31, 2012. By failing to meet this statutory deadline, Plaintiff forfeited any right to demand recovery under the SFIP for this Hurricane Irene claim.

Plaintiff argues that the facts in this case are so egregious that it should be allowed to recover for its losses nevertheless. The egregious facts to which Plaintiff refers are Plaintiff's allegations that Plaintiff's insurance agent gave Plaintiff inaccurate advice about the Proof of Loss filing requirement. Plaintiff specifically alleges that, on October 18, 2011, a representative of Ten Eyck Group, apparently Plaintiff's insurance agent, told Plaintiff that the Proof of Loss was to be submitted by Defendant's insurance adjuster and not by Plaintiff. Plaintiff also asserts that, on December 8 and 9, 2011, Ten Eyck Group told Plaintiff that Plaintiff did not have to submit its own Proof of Loss.

The Ten Eyck Group statements that Plaintiff cites in its motion appear to be very misleading and could very well have caused Plaintiff to fail to file a timely Proof of Loss. However, Plaintiff has not alleged any theory under which Defendant should be held responsible for any incorrect advice or failure to perform by Ten Eyck Group. Ten Eyck Group is apparently Plaintiff's own insurance agent and has no alleged connection to Defendant.

Although this result may seem harsh, "[t]he principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create

ostensibly inequitable results." *Jacobson*, 672 F.3d at 176.[2] Accordingly, Plaintiff's failure to file a timely Proof of Loss requires this Court to dismiss Plaintiff's suit in its entirety.

C.     **Plaintiff's Unfair Claims Settlement Practices Claim**

In Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss, Plaintiff advances a new legal theory: that Defendant's insurance adjuster prepared and submitted a Proof of Loss that was replete with false information as to the total square footage of Plaintiff's building as well as the number of stories, rooms, and baths. Plaintiff now alleges that Defendant used that materially false Proof of Loss to try to induce Plaintiff to settle for an amount of only $9,706.99. Plaintiff argues without citation to legal authority that such action constitutes fraud and unfair claims settlement practices. Plaintiff argues that this activity "should not be condoned by this Court" and violates New York Law.

The SFIP, FEMA regulations and the NFIA, exclusively govern "all disputes arising from the handling of any claim under [an SFIP] policy." 44 C.F.R. pt. 61, app. A(1), art. IX. The Second Circuit has found that the SFIP preempts all state-law claims. *See Jacobson*, 672 F.3d at 174 (recognizing that "'[a]ll disputes arising from the handling of any claim under [a NFIP] policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law'" (quotation omitted)). Other circuits have similarly ruled. *See, e.g.*, *Shuford v. Fidelity Nat. Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1344 (11th Cir. 2007); *Wright v. Allstate Ins. Co.* 415 F.3d 384, 390-91

---

[2] In this case, the inequity may be somewhat mitigated by the following: Defendant alleges and Plaintiff does not dispute that, on August 16, 2012, FEMA approved a request that Defendant submitted for a limited waiver of the Proof of Loss policy provision. Accordingly, a total payment was issued to Plaintiff in the FEMA waiver amount of $12,373.21.

(5th Cir. 2005). Accordingly, this Court declines to allow Plaintiff to add a state-law claim for unfair claims settlement practices to its complaint.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim, *see* Dkt. No. 13, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED**

Dated: February 13, 2015
       Syracuse, New York

*signature*
Frederick J. Scullin, Jr.
Senior United States District Court Judge